UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON BRADLEY,

    Plaintiff,

v.

JEFFREY A. SMITH and
KELLY M. HAWKINS,

    Defendants.

Case No. 22-11457
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [25]**

Jason Bradley and Jeffrey Smith allegedly had an oral agreement that, while Bradley served a prison sentence following a federal court conviction, Smith would store in Indiana, and ultimately deliver to Michigan, $375,000 in cash and a Mercedes belonging to Bradley. Bradley says Smith breached that agreement by failing to deliver all the money and the Mercedes to Michigan. So he filed this suit against Smith, and Smith's girlfriend Kelley Hawkins, bringing claims for extortion, fraud, breach of contract, unjust enrichment, promissory estoppel, conversion, and tortious interference.

In response, Defendants moved to dismiss, arguing that this Court lacks personal jurisdiction over them. The Court agrees that it lacks jurisdiction over Hawkins, but finds jurisdiction over Smith is proper. Thus, Defendants' motion is denied as to Smith and granted as to Hawkins.

# I. Background

As discussed below, when deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) without an evidentiary hearing, the Court takes the pleadings and affidavits in the light most favorable to the plaintiff, in this case Bradley. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

This case arises from an oral contract between Jason Bradley (through his mother Katrina Strub) and Jeffrey Smith. (ECF No. 1, PageID.2.) Bradley alleges that Smith agreed to transport and temporarily store $375,000 in cash and a Mercedes, both of which belonged to Bradley, at Smith's home in Indiana. (*Id.* at PageID.5.) Smith was then to deliver the property to Strub in Michigan, upon Bradley or Strub's request. (*Id.* at PageID.6.) In exchange, Bradley agreed to pay Smith $5,000. (*Id.*)

Smith partially performed his obligations under the contract by picking up the cash and Mercedes from Arizona, driving the Mercedes to his home in Indiana, storing the money and car at his home, and on two occasions delivering some of the money to Strub in Michigan. (*Id.* at PageID.7.) Strub then allegedly requested numerous times that Smith bring her the remaining $250,000 and the Mercedes, but Smith refused. (*Id.* at PageID.8.) Smith claimed the assets had been seized. (*Id.*) Bradley alleges this was a lie. (*Id.*) Bradley also says that Smith threatened to report

what Smith believed were crimes committed by Bradley if he continued to seek repayment of his money and delivery of his car. (*Id.*)

Additionally, Bradley claims that Kelly Hawkins, Smith's girlfriend, "interfered with the execution of the contract" and "aided and abetted Defendant Smith's fraudulent scheme." (*Id.* at PageID.2.) Specifically, Bradley alleges that Hawkins called Strub in May 2018 and "fabricated a story telling Strub that Defendant Smith's 'house had been raided,' and that Smith had been arrested and Plaintiff's money had been 'seized by the feds.'" (*Id.* at PageID.14–15.)

In 2019, Strub filed suit against Smith and Hawkins, on Bradley's behalf, in the Northern District of Indiana. *Strub v. Smith*, Case No. 19-CV-229 (N.D. Ind. June 26, 2019), ECF No. 1. The suit was dismissed in 2021 after the Indiana court ruled that Strub did not have standing to bring a claim. *Id.* at ECF No. 82.[1] Bradley then filed suit in this Court, bringing claims for extortion, fraud, breach of contract, unjust enrichment, promissory estoppel, and conversion against Smith and a claim for tortious interference against Hawkins. (ECF No. 1, PageID.9–15.) Defendants moved to dismiss for lack of personal jurisdiction. (ECF No. 25.)

## II. Legal Standard

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law— and any such exercise of jurisdiction must be compatible with the due process

---

[1] Defendants have also attached a transcript of the hearing where Strub's case was dismissed, available at ECF No. 25-1 in this case.

3

requirements of the United States Constitution." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (citing *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). Personal jurisdiction comes in two forms: general and specific. *See generally Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021). General jurisdiction is proper when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction, on the other hand, is proper only when "claims in the case arise from or are related to the defendant's contacts with the forum state." *Id.*

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (citation and internal quotation marks omitted). But this burden varies depending on the district court's response to the motion to dismiss, as the court may (1) decide the motion on written submissions and affidavits alone, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Theunissen*, 935 F.2d at 1458.

Here, since there has been no discovery or evidentiary hearing, the Court must decide the motion on written submissions and affidavits alone. So Bradley need only make a prima facie case for personal jurisdiction. *Id.* at 1458–59 ("Where the court

4

relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."); *see also Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citation omitted) (describing this burden as "relatively slight").

A prima facie showing of the court's personal jurisdiction requires that the plaintiff establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In response to a motion to dismiss, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction."[2] *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). The pleadings and affidavits submitted on a 12(b)(2) motion are "received in a light most favorable to the plaintiff[,] . . . [and] the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Additionally, in a case with multiple defendants the plaintiff must prove that jurisdiction is proper as to each defendant. *Beydoun v. Watamoua Restairamts Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014).

---

[2] Defendants mistakenly claim that Bradley's attachment of an affidavit converts the motion into one for summary judgment, but as noted here Bradley's inclusion of an affidavit in his response was necessary and does not convert the motion into one for summary judgment.

5

Having laid out the standard, the Court also finds it helpful to highlight Bradley's specific jurisdictional allegations.

Bradley alleges that the contract was "wholly negotiated and executed" by his mother and "attorney-in-fact" Katrina Strub, who is a resident of Michigan, and that Smith communicated with Strub while she was in Michigan. (ECF No. 27-1, PageID.220, 230.) The terms of the contract, says Bradley, included a provision that Smith would eventually deliver the money and Mercedes to Michigan, upon request. (*Id.* at PageID.221.) While Defendants dispute this, alleging that performance was to occur in Indiana only (ECF No.25, PageID.144–45), this dispute must be resolved in Bradley's favor for the purposes of this motion. *Theunissen*, 935 F.2d at 1459 ("[T]he court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal."). Additionally, Defendants admit that Smith physically delivered some of the money to Strub in Michigan, implicitly accepting that a term of the contract was to deliver at least part of the property to Michigan at some point. (ECF No. 25, PageID.141.) The parties also agree that Hawkins made a phone call to Strub in Michigan. (ECF No. 28-3, PageID.289.)

### III. Analysis

From these highlights and the discussion below, neither Smith nor Hawkins is subject to general jurisdiction in Michigan, since neither is a resident of Michigan, nor has Bradley demonstrated that either has continuous and systematic contacts with the state. But the Court finds that Smith is subject to specific jurisdiction in this matter, whereas Hawkins is not.

6

### A. Michigan's Long-Arm Statute

For specific jurisdiction to exist in a diversity case, as here, "two factors must be satisfied: the forum state long-arm statute, and constitutional due process," *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Michigan's long-arm statute is the first step in this two-step analysis. *Sullivan v. LG Chem, Ltd.*, No. 22-1203, 2023 WL 5286965, at *8 (6th Cir. Aug. 17, 2023). That statute specifically enumerates acts that give rise to personal jurisdiction, instead of stretching automatically to extend jurisdiction wherever the Due Process Clause permits. *Id.* at *7; *see also Green v. Wilson*, 565 N.W. 2d 813, 815–16 (Mich. 1997). But "[I]f a defendant's actions or status fit within a provision of a long-arm statute, jurisdiction may be extended as far as due process permits." *Id.* (citing *Green*, 565 N.W. 2d at 816). In other words, the Due Process Clause and Michigan's long-arm statute share the same outer boundary, but do not overlap entirely. *Id.*

A defendant's conduct must fall within a provision of Michigan's long-arm statute for the Court to have jurisdiction. *Id.* (citing *Green*, 565 N.W. at 817). Even a single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Lafarge Corp. v. Altech Env't, U.S.A.*, 220 F. Supp. 2d 823 (E. D. Mich. 2002). There are two provisions of the Michigan long-arm statute that are most relevant to this case.

First, jurisdiction exists under § 600.705(5) where a nonresident enters into a contract to render services or furnish materials in Michigan. Mich. Comp. Laws § 600.705(5); *Corey v. Cook & Co.*, 142 N.W.2d 514, 516 (Mich. App. 1966). Bradley

7

alleges that Smith entered into a contract with Strub, acting on Bradley's behalf, to temporarily store the cash and Mercedes and eventually deliver those items to Strub in Michigan. (ECF No. 1, PageID.6.) By doing so, Smith agreed to perform services that would occur, at least in part, in Michigan. Under Michigan's long-arm statute, this is enough to confer Michigan courts with specific jurisdiction over Smith, as related to that contract. *Corey*, 142 N.W.2d at 516.

While Smith claims that the contract was to occur in Indiana, since that is where the cash and car would be stored, he delivered part of the money to Michigan on two separate occasions. (ECF No. 25, PageID.139.) Even if, as Smith claims, he only agreed to "hold the property until further direction from Plaintiff," based on his partial performance of the contract he could assume that future deliveries would also occur in Michigan. (*Id.*) His conduct both actually demonstrates that services were rendered in Michigan (albeit partially) and supports an inference that Smith knew that delivery was to occur in Michigan. Regardless, on a motion to dismiss any factual disagreements must be resolved in favor of the non-moving party (in this case, Bradley) and the Court must assume that the contract included a term for delivery to Michigan. *Theunissen*, 935 F.2d at 1459. Therefore, the Court may exercise jurisdiction over Smith consistent with Michigan's long-arm statute.

Now for the second defendant, Hawkins, and the second relevant provision, § 600.705(2)—doing, causing an act to be done, or causing consequences to occur in Michigan that result in a tort action. Mich. Comp. Laws § 600.705(2). Bradley alleges that Hawkins called Strub in Michigan in May 2018 and told her that the money and

8

vehicle that Smith was supposed to deliver to her had been seized. (ECF No. 1, PageID.5–8, 14–15.) This, says Bradley, was untrue and constitutes tortious interference with contract. (*Id.*) And when a nonresident "further[s] a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate" even if the nonresident never visited the forum state in person. *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E. D. Mich. 1996) (citing *Onderik v. Morgan*, 897 F.2d 204 (6th Cir. 1989) (*rev'd on other grounds*)). This is true even if the nonresident made only one tortious phone call. *See LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989), ("The quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications." (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985))). So determining jurisdiction requires a brief detour into tort law.

Under Michigan law, there are four elements for tortious interference with contract: (1) the plaintiff has a valid contract with a third party; (2) the defendant knows of this contract; (3) the defendant intentionally and improperly interfered with the contract, causing a breach, disruption, or termination; and (4) the plaintiff is harmed. *Elec. Planroom, Inc. v. McGraw-Hill Cos., Inc.*, 135 F. Supp. 2d 805, 823 (E. D. Mich. 2001). Even if Bradley could demonstrate the first two elements—that the contract was valid and that Hawkins knew of the contract—he cannot demonstrate that Hawkins' phone call caused a breach, disruption, or termination of the contract that led to his harm. By the time Hawkins allegedly made her phone call

9

to Strub in May 2018, Smith had already refused to return the remainder of the money and the Mercedes to Strub. (ECF No. 1, PageID.8 ("From April 2018 onward, Defendant Smith refused to return [Bradley's property] . . . . From on or about April 25, 2018 through May of 2018, Defendant Smith sent numerous intimidating text messages to Strub, threatening to report Plaintiff's purported crimes to law enforcement if Strub continued to attempt to recover [Bradley's property].")). Bradley has not alleged any facts to show that Hawkins' phone call caused additional harm: Smith had already broken the contract by the time of Hawkins' phone call, so with or without the call, he would not have received his property back.

Bradley also alleges that Hawkins "aided and abetted Defendant Smith's fraudulent scheme" and claims that "other acts of tortious interference by Defendant Hawkins will be uncovered during discovery." (*Id.* at PageID.2, 15.) Yet other than the phone call, Bradley does not allege any specific acts that Hawkins did to aid and abet Smith. Mere allegations, without supporting facts, cannot support personal jurisdiction. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) ("[T]otally unsupported allegations of conspiracy cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction."); *Neogen Corp.*, 282 F.3d at 887 ("[To meet his prima facie burden, plaintiff must establish] with *reasonable particularity* sufficient contacts between [the defendant] and the forum state to support jurisdiction." (emphasis added))

Since Hawkins' phone call does not amount to a tortious act, and Bradley has alleged no other actions by Hawkins, her conduct does not fit into any category in

10

Michigan's long-arm statute. Accordingly, the Court finds that it does not have personal jurisdiction over Hawkins.

### B. Due Process

The second step of the personal jurisdiction analysis is to determine whether exercising jurisdiction over a defendant would comply with the requirements of the Due Process Clause. "The Fourteenth Amendment's Due Process Clause limits a . . . court's power to exercise jurisdiction over a defendant." *Ford Motor Co.*, 141 S. Ct. at 1024. As the Supreme Court has explained, a nonresident defendant must have sufficient minimum contacts with the forum state such that the maintenance of the suit is "reasonable . . . [and] does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945)).

In the Sixth Circuit, courts apply a three-part test to decide whether the exercise of personal jurisdiction is consistent with due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Part one asks whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or caus[ed] a consequence in the forum state." *Id.* Part two looks to whether the suit arises from or relates to the defendant's activities in the forum. *Id.*; *see also Ford Motor Co.*, 141 S. Ct. at 1026. And part three assesses whether the defendant's actions and their consequences "have a substantial enough connection" with Michigan to "make the exercise of jurisdiction over the defendant[s] reasonable." *Brewington*, 836 F.3d at 550.

**1. Purposeful Availment**

First, purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *LAK*, 885 F.2d at 1300 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Indeed, neither the unilateral activity of a third party nor the "mere injury" of someone in the forum state can satisfy the requirements of purposeful availment. *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Instead, the defendant must "reach out beyond one state and create continuing relationships and obligations with citizens of another state." *See Burger King*, 471 U.S. at 473. And the defendant's actions must "connect[] him to the forum in a meaningful way." *See id.* In other words, courts must determine whether the defendant has "invoked the benefits and protections" of the forum state's law, which carries with it the reciprocal obligation of "submitting to the burdens of litigation in that forum as well." *Id.* at 476 (quoting *Hanson*, 357 U.S. at 243). And the Court can consider the defendant's contacts with Michigan in the aggregate. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("Because Patterson deliberately did both of those things [signed a contract and injected his product into the stream of commerce] . . . we believe that ample contacts exist to support the assertion of jurisdiction in this case.").

While in some cases a contract with an in-state entity does not by itself establish purposeful availment, Smith has done more than that. *See Burger King,* 471 U.S. at 473. According to Bradley's allegations, Smith contracted with Bradley to

12

deliver cash and a Mercedes to Michigan and twice came to Michigan to deliver a portion of that cash. Smith also communicated with and allegedly threatened Strub via phone calls to Michigan. Although mere phone calls often do not establish purposeful availment, *see, e.g.*, *LAK*, 885 F.2d at 1300 (explaining exchanges via mail and telephone calls insufficient); *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) (noting telephone calls insufficient), "the court must examine the content of the communication" to determine whether the out of state caller purposefully availed of the forum state or caused a consequence to occur there. *Gen. Motors,* 948 F. Supp. at 663 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)). And here, Bradley alleges that Smith's communications with Strub amount to fraud and extortion.

In sum, "viewing the cumulative facts in [Bradley's] favor, this Court concludes that [Bradley] has adduced evidence sufficient to support a *prima facie* finding of purposeful availment" as to Smith. *See Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 484 (6th Cir. 2003).

### 2. Relation to Forum State

Second, the Court considers whether Smith's contacts with Michigan "relate[] to the operative facts of this controversy." *See MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903 (6th Cir. 2017). As recently clarified by the Supreme Court, "arise from" and "relate to" are two separate standards, and if either is satisfied, this will support jurisdiction. *Ford Motor Co.*, 141 S. Ct. at 1026 ("[O]ur most common formulation of the rule demands that the suit 'arise out of or relate to the defendant's

contacts with the forum.' The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." (citations omitted)). Relatedness has been a "lenient standard" that can be satisfied when the cause of action is "at least marginally related to the alleged contacts" between the defendant and the forum. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (applying "lenient" standard). Put another way, causes of action that are "made possible by" or "lie in the wake of" defendants' contacts with the forum state arise from those contacts. *Air Prods.*, 503 F.3d at 553.

Here, Smith's contacts with Michigan directly led to the claim of extortion. Bradley alleges Smith committed extortion by sending threatening messages to Strub in Michigan. (ECF No. 1, PageID.10.) Likewise, Bradley alleges that Smith breached his contract by not delivering the Mercedes and remaining cash to Michigan. (*Id.* at PageID.11–12.) Smith's agreement to deliver items to Michigan, and subsequent violation of that provision, led directly to the claim of breach. These were caused by, and therefore arise from, Smith's contacts with Michigan.

Bradley's other claims, fraud and conversion, are less closely tied to Michigan, but still sufficiently pass the lenient "related to" standard as articulated by the Sixth Circuit. Bradley claims Smith committed fraud by misrepresenting that he would deliver the Mercedes and cash to Michigan. (*Id.* at PageID.10–11.) Strub's reliance on this promise, according to Bradley, induced her to contract with Smith and entrust him with Bradley's property. (*Id.*) This contract was negotiated in Arizona, not

14

Michigan, so the misrepresentation occurred in Arizona. Similarly, Bradley claims that Smith committed conversion by refusing to deliver the property to Michigan and keeping it in Indiana. Thus, the wrongful act was committed in Indiana, not Michigan.

Again, however, the defendant's actions need only "relate to" the claims, they need not be the cause of plaintiff's claims. *Ford Motor Co.*, 141 S. Ct. at 1026. Strub was in Michigan when she requested that Smith bring the cash and Mercedes to Michigan, and Smith communicated with Strub by sending messages to Michigan, allegedly refusing to return the items and claiming they had been seized. Without Smith's refusal to return the items, which was purposefully sent to Michigan, Bradley would not have known that Smith committed fraud and conversion. Bradley could have presumed that Smith would return the items in the future. And since even post-contract communications can amount to purposeful availment, claims related to these communications can be said to relate to Smith's purposeful contacts with Michigan. *See LAK*, 885 F.2d at 1301, quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir.1985) ("The quality of the contacts as demonstrating purposeful availment is the issue, not their number or their *status as pre- or post-agreement communications*." (emphasis added)). Additionally, the crux of the fraud and conversion claims is the failure to deliver the items to Michigan as promised. Thus, Bradley's claims are related to Smith's contacts with Michigan.

15

### 3. Reasonableness of Exercising Jurisdiction

Third, the Court considers whether exercising personal jurisdiction over defendants would be fair, "i.e., whether it would comport with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68. The Court considers several factors at this stage: (1) "the plaintiff's interest in obtaining relief"; (2) "the interests of the forum State"; and (3) "the burden on the defendant." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014). Where the first two parts of the Due Process Clause test are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Theunissen,* 935 F.2d at 1461.

Defendants largely restate their arguments from the first two parts of the constitutional analysis, arguing that because they did not purposefully avail themselves of Michigan and because the claims do not arise out of their connection to Michigan, exercising jurisdiction over them would be unreasonable. (ECF No. 25, PageID.150–51.) They also argue that, since "Defendants are residents of Indiana, they own no property in Michigan, nor do they conduct business in Michigan," submitting them to jurisdiction in Michigan would "run afoul of the generally accepted notions of 'fair play and substantial justice.'" (*Id.*) The Court is sensitive to these concerns, but they do not amount to an unusual hardship that would defeat jurisdiction. *See, e.g.*, *Air Prods.*, 503 F.3d at 555 ("Although it would be a burden on [defendants] to travel . . . . there is an inference of reasonableness when the first two *Southern Machine* prongs are satisfied, and because there are no considerations put

16

forward by Defendants to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case.")

Furthermore, Michigan has an interest in protecting its residents from fraud, extortion, and conversion, and in ensuring contracts that take place in Michigan are enforced. And Bradley has an interest in obtaining relief, especially since Strub already attempted and failed to reacquire his property in her Indiana suit. For these reasons, and because Smith has not overcome the inference of reasonableness, the Court finds that exercising jurisdiction over Smith is reasonable.

## IV. Standing

Defendants raise several issues for the first time in their reply brief including failure to state a claim, subject matter jurisdiction and standing, judicial notice, summary judgment, and sanctions. (ECF No. 28, PageID.273–78.) In his surreply, Bradley also raises an additional issue for the first time—judicial estoppel. (ECF No. 31, PageID.435.) It is inappropriate to raise new issues for the first time in a reply. *See* E.D. Mich. LR 7.1(i); *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432 (6th Cir. 2022) ("we have consistently held that arguments made to us for the first time in a reply brief are waived."). If the parties would like the court to consider these issues, they need to file separate motions asking the Court to do so. *Id.*

Nevertheless, the Court has an independent obligation to ensure that it has subject matter jurisdiction throughout the case and may raise this issue sua sponte. Fed. R. Civ. Pro. 12(h)(3); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Vander Bouegh v. EnergySolutions, Inc.,* 772 F.3d 1056, 1064 (6th Cir. 2014).

17

Accordingly, the Court will address the issue of standing raised by the Defendants in their reply.

The essence of Defendants' argument appears to be that Bradley lacks standing to challenge the alleged contract with Smith because it was negotiated and entered into by Strub, not Bradley. (ECF No. 28, PageID.272.) Defendants claim: "Plaintiff asserts that the oral agreement was 'wholly negotiated and executed by Strub,' allegedly acting as Plaintiff's 'attorney-in-fact.' By disclaiming his ownership and involvement with the alleged contract at issue in this case, Plaintiff has eviscerated his own standing to bring any of the claims set forth in his complaint." (*Id.* at PageID.275.) Bradley does acknowledge that the contract was negotiated by Strub but maintains that the property was his and that Strub was acting for his benefit in negotiating the contract.

To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) defendant's conduct caused the injury; and (3) the injury is redressable. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). Here, Bradley has shown all three. First, Bradley has suffered a concrete, particularized, and actual injury through the loss of his car and $250,000. Based on the allegations in his complaint, Bradley has demonstrated that the Defendants' conduct (refusing to return the property) caused his harm. Finally, Bradley's injury is redressable—if the Court orders the monetary relief that Bradley seeks, he can be compensated for his losses. For standing purposes, it is immaterial whether Bradley negotiated the contract or whether Strub

18

negotiated the contract on his behalf—the property, and therefore the injury resulting from the loss of the property, was Bradley's.

Defendants also argue that since Bradley previously disclaimed ownership of the property at issue, he cannot "in a deceptive about-face claim ownership of the same property" in a subsequent case. (*Id.* at PageID.276.) Yet at the same time, Defendants invite the Court to take judicial notice of the previous proceeding, in which the Indiana court found the property to belong to Bradley. (*Id.* at PageID.275.) In the Indiana case, Defendants previously argued that it was Bradley's property, not Strub's, and they prevailed on this position. Now they argue the opposite. Accepting the Defendants' argument here—that Bradley lacks standing—would leave no recourse for Bradley or Strub. Since the Indiana court ruled that Strub lacked standing because it was not her property, if this Court accepts that Bradley lacks standing because it is not his contract, this leaves no one with standing to challenge the alleged contract, and leaves the Mercedes and $250,000 legally ownerless.

## V. Conclusion

Accordingly, Bradley has successfully met his prima facie burden and demonstrated that Michigan's long-arm statute and the Due Process Clause have been satisfied as to this Court's specific personal jurisdiction over Defendant Smith. Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 25) as to Smith is DENIED.

However, Bradley has not met these burdens as to Defendant Hawkins. Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 25) as to Hawkins is GRANTED.

SO ORDERED.

Dated: September 27, 2023

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE